IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| MARK MARTIN and LISA MARTIN | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 170106R |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appealed Defendant's Notice of Deficiency Assessment, dated November 4, 2014, for the 2011 tax year and Defendant's Notice of Deficiency Assessment, dated April 28, 2015, for the 2012 tax year. A trial was held on October 3, 2017, in the Oregon Tax Court. Keith Karnes (Karnes) appeared on behalf of Plaintiffs. Mark Martin (Martin) testified on behalf of Plaintiffs. Tracy Skvarch-Pfannes (Skvarch) appeared on behalf of Defendant, but did not testify. Plaintiffs' Exhibits 1 to 8 were admitted without objection. Defendant's Exhibits A to L were admitted without objection.

## I. STATEMENT OF FACTS

Martin testified that he worked as a salesperson with Kenco, a food broker, since 2000. During the years at issue he demonstrated meat products, such as Tyson and Campbell, to various customers including hospitals, universities, independent grocery chains, and casinos in Oregon, California, and Washington. Martin's job functions were sales, quality control, demonstrations at stores with tables for end-users to sample, and a market research component

---

[1] This Final Decision incorporates without change the court's Decision, entered December 11, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

for competitor pricing. Martin testified that the meat commodity pricing changed quickly, either weekly or monthly. He traveled to stores, such as WinCo, to verify the competitors' product pricing either at the deli counter for fresh products or on the shelves for nonperishable products. He wrote down the pricing of competitor products, sometimes capturing a photograph using his cell phone, then sent emails from his home office in Salem to the regional company office in Portland. He created reports to send to the regional office occasionally from the store location or from his car, depending on available Wi-Fi access, but usually he sent the reports from his home office in Salem. He was not required to travel to Portland to process orders or to create his reports. Martin testified that he traveled to WinCo every day to look at commodity pricing because the company is a "treasure trove of information." He did not have the ability to affect pricing, but he gave information to Kenco employees who did. Martin testified that Kenco did not employ another person to look at pricing as it was part of his job.

Martin traveled to Portland for scheduled meetings ranging from once a month to twice a week. He was not responsible for setting up the meetings that required his attendance. The regional office in Portland had little "generic" cubicles where laptops could be connected, which were for anyone to use. When he was at the Portland regional office, Martin used a cubicle to check email, write notes, grab product samples, and prepare for meetings. The cubicles had internet access, but he used his cell phone to contact clients. Kenco's regional office had a general phone line for incoming calls, though Kenco removed the voicemail system prior to 2011.

Martin testified that some company representatives operated out of the regional office, which included the manager, the administrative assistant, and a couple of sales representatives who worked and reported to the regional office on a daily basis. Martin stated that the manager

had the discretion to determine who was required to report to the regional office on a daily basis. Martin testified that Kenco required a home office for the position. Defendant received a copy of Kenco's job description on August 24, 2012, outlining as "Required Experience" that a "Home Office required due to nature of position and ability to work un-supervised." (Def's Ex I at 5.) Martin submitted a second job description on October 25, 2013, that contained the same language under "Required Skills." (Def's Ex E at 1.) When Skvarch questioned the difference between the two documents, Martin testified that he believed Kenco's manager realized the requirement of a home office was misplaced under "Required Experience" instead of the correct location of "Required Skills."

Skvarch retained audit trail notes for the tax years at issue, and maintained records from a prior 2010 audit performed by Antonio Inovejas (Inovejas). (*See* Def's Exs A, I, J.) Martin testified that a new company, called Advantage Waypoint, purchased Kenco in June of 2012. For the 2010 audit, Inovejas emailed Lily Pecka (Pecka) at Advantage Waypoint and asked if the company required its employees to have a home office, to which Pecka answered "NO" on September 20, 2012. (Def's Ex I at 2.) Martin testified that Pecka worked at Advantage Waypoint's Seattle office and she was not a manager before Kenco was sold. In the 2011 audit trail notes, dated October 30, 2013, Skvarch recorded that she spoke to Debbie Gross (Gross) in Human Resources at Advantage Waypoint who said that "[i]f an employee reported to an office that was 2 to 3 hours away[, the company] would allow them to work from home." (Def's Ex A at 2.) Martin testified that Gross was not an employee of Kenco and would not know of his position's requirements. When Advantage Waypoint purchased Kenco in June of 2012, Martin's job functions did not change. Also, he surrendered his old "legacy" laptop, which resulted in the loss of access to the Kenco electronic documents.

Martin testified that during the tax years in issue he maintained a 10 by 10-foot home office in his personal residence, containing a fax machine, a printer that could copy and scan, and high speed internet access. Kenco provided a laptop for his use to take on his sales trips. Martin entered information into the laptop and then traveled back to his home office to submit it to the Portland regional office through the internet. He tried to avoid connecting to various Wi-Fi hotspots, presumably because Wi-Fi hotspots were not safe internet connections. He attempted to submit the orders and reports every day.

Martin testified that he traveled to the regional office once or twice a week to obtain samples, both frozen and dry meat product goods, and transported them to his home office. He used dry ice to place the meat into a travel container, and when he arrived at his home office he placed those samples in an employer-provided freezer. He attended training in food handling protocol, received "Serve Safe" certification, and stored the food product samples in the dedicated freezer. Also, Martin did not comingle personal and company food items because he owned a separate refrigerator-freezer unit for his personal home use.

Kenco maintained an employee policy for expenses, which stated: "[a]uto expense is paid at $500.00 per month, and is included in your regular monthly salary check. This car-allowance is also included in your total monthly salary and is treated as regular taxable income under IRS regulations." (Def's Ex B at 2.) Martin claimed an itemized deduction on his tax return for business mileage because he did not submit the mileage to Kenco per the company policy of being unreimbursed. He testified that he owned two or three additional cars, which his family used. He stated that the taxing agencies audited him in the past, and he was allowed the business mileage, and he has not made any substantial changes on how he recorded the mileage in 2011.

/ / /

Martin occasionally traveled overnight, but typically he returned to the home office every day. He visited customers along the I-5 corridor when he traveled to Portland to pick up samples. Martin testified that Kenco wanted their salespersons to visit customers while making the trips in order to be efficient, which he tried to do.

Martin kept a dedicated calendar in his 2008 Chevrolet Impala to track his business mileage for 2011 and 2012. He wrote in the vehicle calendar daily when travelling and the record keeping method remained the same for both years. He made the mileage entry in the morning, then again when he returned to the home office. The calendar noted the beginning mileage for the day, a quick note of where he went on his travel, and the ending mileage for the day. (*See* Ptf's Ex 1, 4.) Martin testified that the abbreviation "Sal" meant Salem, and he maintained a more detailed calendar on his laptop computer.

Skvarch questioned Martin on his logs, referencing her audit trail notes dated October 15, 2013, in which he said he no longer has access to the old company logs. (Def's Ex A at 2.) Martin testified that he cannot access his Outlook calendar because he turned in the old laptop when Advantage Waypoint purchased Kenco, and the Outlook calendar was effectively a duplication of his records. Martin created a spreadsheet, formatted based upon an IRS sample, to summarize his mileage for 2011 and where he traveled. He was not sure when he created the spreadsheet, but suspected around the time he was audited. The Kenco logs were another version of the mileage notes he transcribed into Outlook from the car calendar. When questioned further by Karnes, Martin testified that he kept multiple sets of logs because he has been audited so many times.

The 2011 mileage spreadsheet showed the date of travel, the location of travel, the starting and ending odometer readings, whether it was business or commuting mileage, and the

number of miles. (*See* Ptfs' Ex 3.) Martin recorded the first trip from his home office in Salem to the first customer visit as commuting mileage because he was under the impression that the "first call" was commuting mileage per the IRS information he obtained. As an example of a day's entry, on January 7, 2011, Martin traveled from his home office to south Salem's WinCo for one commuting mile, then traveled to Wilsonville's Sysco Portland office on the way to Kenco's regional office for a sales meeting, then returned to his home office for a total of 103 business miles. (*Id.* at 1.) When questioned about the frequent trips to Kenco's regional office in January 2011 but not in other months of the year, Martin testified that every year Kenco holds an abundance of training meetings for new products. (*See id.*) The training was required attendance, and Kenco's normal practice was to hold the training at the regional office.

Martin testified that he took his vehicle to dealership and oil change service locations to keep his car functioning. Martin kept all of the vehicle's service records in a file at home. Wilsonville Chevrolet completed repairs when the vehicle was dropped off on March 1, 2011, and picked up on March 3, 2011. (Ptfs' Ex 2.) The dealership recorded on the invoice mileage of 99,981. (*Id.* at 1.) Martin stated that the mileage on the invoice was accurate. The mileage on the calendar kept in the vehicle showed on March 1, 2011, a starting odometer of 99,915 and an ending odometer of 100,019. (Ptfs' Ex 1 at 3.) Martin left the vehicle with the dealership for the repairs, and picked up the vehicle on March 3, 2011. When questioned about the mileage discrepancy – the mileage car log showed ending mileage of 100,019 but the car was given to the dealership at 99,915 – Martin testified that he rented a car for a couple of days and he most likely wrote the ending mileage on the wrong date in the calendar when it was actually the ending mileage on March 3. Oil Can Henry's performed an oil change service on January 19, 2012, and the invoice showed the vehicle's odometer reading to be 135,164. (Ptfs' Ex 5.)

Wilsonville Chevrolet completed repairs on September 4, 2012, and the invoice reported the vehicle's odometer reading to be 158,906. (Ptfs' Ex 6.)

Martin testified that he did not claim the home office deduction because he felt the deduction was "not worth it." An independent auditor named Randy Robertson (Robertson) reviewed Martin's return for a conference and second audit for Defendant before Martin filed a complaint with the Magistrate Division. In a letter, dated November 4, 2014, Robertson recorded several mileage discrepancies between the calendar, the spreadsheet, and Kenco's reimbursement reports. (Def's Ex G at 2.) Skvarch questioned one example for a trip on March 16 and 17, 2011, where expenses were reimbursed by Kenco for work performed in Eugene, but the spreadsheet did not show mileage. (*Id.*) Skvarch questioned a second example for a trip on October 26, 2011, where expenses were reimbursed for work performed in Coos Bay, but the mileage spreadsheet indicated travel to Eugene. (*Id.*)

The first example on March 16 and 17, 2011, showed the reimbursement report claimed travel to McDonald Wholesale Food Show in Eugene. (Def's Ex B at 6.) The mileage spreadsheet showed no travel on those dates other than returning to the home office in Salem on March 17. (Def's Ex C at 6.) Martin testified that he dropped off his car in Portland on March 15, rented a truck or van to transport equipment to Eugene, and drove the rented vehicle to the food show. Martin drove the rented vehicle back to the regional office on March 17, where he picked up his car. Martin testified that he did not record mileage on that trip because he did not travel using his car, and Kenco reimbursed him for the rental vehicle.

The second example on October 26, 2011, showed the reimbursement report claimed travel to Mill Casino in Coos Bay. (Def's Ex B at 18.) The mileage spreadsheet showed travel to Eugene, Grants Pass, and Medford. (Def's Ex C at 21.) Martin testified that on occasion, he

would ride with a manufacturing representative to visit clients. On that particular occasion, Martin rode with manufacturer representative Tyce Nansic (Nansic) with Tyson Foods. Martin met Nansic in Eugene, and rode in Nansic's car to Coos Bay for a "casino blitz" to visit various casinos and other locations, before returning to Eugene to get his car.

Martin testified that he has paid the taxes assessed, and the claim is to obtain reimbursement of the alleged overpayment of taxes to Defendant.

## II. ANALYSIS

The issue in this case is whether Martin may deduct certain unreimbursed business expenses for the 2011 and 2012 tax years, and if so, whether such expenses are sufficiently substantiated. Martin is specifically challenging Defendant's partial disallowance of his claimed deductions for travel between his office in his home in Salem, Oregon, and Kenco's regional office in Portland, Oregon. No testimony was presented on the issue of the disallowance of a 2011 deduction for a casualty loss and therefore the court will not address that issue.

In analyzing Oregon income tax cases, the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's personal income tax law identical in effect to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals. ORS 316.007.[2] Second, in cases before the court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance" of the evidence. ORS 305.427. Third, allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Finally, "[i]n an appeal to the Oregon Tax Court from an

___

[2] The court's references to the Oregon Revised Statutes (ORS) are to the 2009 version for the 2011 tax year and the 2011 version for the 2012 tax year.

assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency * * *." ORS 305.575.

A.      *Unreimbursed Employee Business Expenses, Generally*

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253 (2002), 2002 WL 236685 at *2 (US Tax Ct) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly allowed under the IRC.

Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488 (2001), 2001 WL 332038 at *2 (US Tax Ct). Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r (Cohan)*, 39 F2d 540, 543–44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A)(i). Treas Reg § 1.274-5T(a).

/ / /

/ / /

B.    *Home Office Exception to Nondeductible Commuting Expenses*

Generally, the expense associated with traveling between one's home and work location is considered a nondeductible commuting expense.  Rev Rul 99-7, 1999-1 CB 361 describes several exceptions to that general rule, one of which is when a "taxpayer's residence is the taxpayer's principal place of business within the meaning of [IRC] § 280A(c)(1)(A) * * *."

The question is whether Plaintiff's home was his principal place of business within the meaning of IRC section 280A(c)(1).  The court considers that question even though he did not claim a deduction for his home office.  *See Bogue v. Comm'r*, 102 TCM (CCH) 41, 2011 WL 2709818 at \*7 (2011)) ("Although petitioner did not claim a deduction for the business use of his residence pursuant to section 280A(c)(1), we nonetheless must consider whether petitioner's office in his residence qualifies as his principal place of business under that statute").

IRC section 280A(a) generally prohibits any deduction "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."  IRC section 280A(c)(1) provides several exceptions to that general rule for the taxpayer's business use of a dwelling unit.  Once such exception is for "a portion of the dwelling unit which is exclusively used on a regular basis * * * as the principal place of business for any trade or business of the taxpayer[.]"  IRC § 280A(c)(1)(A).

> "For purposes of subparagraph (A), the term 'principal place of business' includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business."

IRC § 280A(c)(1).  In the case of an employee, this exception applies only if the home office is maintained for the convenience of his employer.  *Id*.

/ / /

Martin testified that he was required by his employer to maintain a home office. Defendant provided job descriptions from his employer stating the same. Martin's employer provides spaces at the Portland regional office for all salespersons to use, and none of the spaces are dedicated to any one salesperson. Martin maintains his files and products at his home office and in his employer-provided freezer at his home. Martin submitted his logs and reports from his home office on a daily basis if he was not traveling overnight for a particular customer or presentation. Although Martin performed his primary job duty – sales – at his customers' and competitors' business locations, he performed substantial administrative activities at his home office. The court is persuaded that Martin's home office was his principal place of business under IRC section 280A(c)(1). Because Martin's home office was his principal place of business under IRC section 280A(c)(1)(A), Martin qualifies for the exception under Rev Rul 99-7, 1999-1 CB 361 and may deduct mileage starting from and ending at his home, to the extent it is substantiated.

C.      *Plaintiffs' Substantiated Mileage*

Certain expenses are subject to limitation for property used for personal purposes under IRC section 280F. Certain property used by an employee in a business is classified as "listed property," including a passenger automobile. IRC 280F(d)(4)(A)(i). If less than 100 percent of the use of any listed property is used in a trade or business, the strict substantiation rules of IRC section 274(d) apply. IRC 280F(d)(2). Expenses described in IRC section 274(d), namely travel, entertainment, gift, and "listed property," may not be deducted unless the strict substantiation requirements of that section are satisfied. *Sanford v. Comm'r*, 50 TC 823, 827 (1968), *aff'd per curiam*, 412 F2d 201 (2d Cir 1969); Treas Reg § 1.274-5T(a). To comply with the strict substantiation rules, the taxpayer must have adequate records or sufficient evidence

corroborating the amount, time, place, and business purpose of the travel. IRC 274(d); Treas Reg § 1.274-5T(b)(2).

Accompanying regulations clarify the adequate records requirement: "[A] taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record, * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *." Treas Reg § 1.274-5T(c)(2)(i). "A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility * * *." Treas Reg § 1.274-5T(c)(1).

The rules for substantiation for listed property become very important in cases before the court where vehicle mileage expenses are at issue.

> "[T]he corroborative evidence required to support a statement not made at or near the time of the expenditure or use must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence."

Treas Reg § 1.274-5T(c)(1). "What this means for taxpayers in simple terms is that even credible testimony from a taxpayer is not enough to substantiate travel miles. There must be reliable documentary evidence to support the deduction." *Spier v. Dept. of Rev.*, TC-MD 160262R, 2017 WL 3053154 at *3 (Or Tax M Div July 18, 2017).

1. *2011 mileage records*

Martin provided his contemporaneously kept vehicle calendar, which contained beginning and ending odometer readings as well as a brief note of where he traveled. The odometer reading on January 3, 2011, showed a beginning mileage of 92,948. (Ptfs' Ex 1 at 1; Ptfs' Ex 3 at 1). The odometer reading on December 31, 2011, showed an ending mileage of

133,428. (Ptfs' Ex 1 at 12.) The total mileage driven on the vehicle in 2011 was 40,480. Martin calculated 36,434 vehicle business miles for 2011. (*See* Ptfs' Ex 3.) Martin's use of his vehicle was not 100 percent for business; therefore he is subject to the substantiation requirements under IRC 274(d).

Upon audit, Martin used that calendar along with his Outlook appointment calendar and reimbursement listing from his employer to create a detailed travel spreadsheet outlining dates of his trips, mileage, travel destination and purpose. Although the spreadsheet was not kept contemporaneously, it was produced using records that were kept contemporaneously to clearly reflect his travel for 2011. The three sets of records provides the necessary substantiation required to satisfy Treasury Regulation § 1.274-5T(c)(1). With Martin's testimony in explaining the discrepancies between certain records and questions posed by Defendant and the court, this court is persuaded that Plaintiffs have met the substantiated requirements to deduct the unreimbursed business mileage claimed on their 2011 tax return.

However, under IRC section 280A(c)(1)(A), Plaintiffs are allowed to deduct mileage starting at the home office until they return to the home office, so long as it is substantiated. Rev Rul 99-7, 1999-1 CB 361. Martin did not include the "commuting" mileage from his home office to the "first call" of the day. Martin's travel spreadsheet showed 2011 "commuting mileage" of 209 miles. (See Ptfs' Ex 3.) Therefore the total unreimbursed business mileage allowed for 2011 is 36,643 miles, allocating 18,306 miles to January through June, and 18,337 miles to July through December. The mileage rate from January through June was $0.51 per mile, resulting in a deduction of $9,336, and the mileage rate from July through December was $0.55 per mile, resulting in a deduction of $10,085. The total 2011 unreimbursed business mileage deduction is $19,421.

## 2. *2012 mileage records*

Martin provided his contemporaneously kept vehicle calendar, which contained beginning and ending odometer readings as well as brief notes of where he traveled. The odometer reading on January 3, 2012, showed a beginning mileage of 133,432. (Ptfs' Ex 4 at 1). The odometer reading on December 20, 2012, showed an ending mileage of 169,408. (Ptfs' Ex 4 at 12.) The total mileage driven on the vehicle in 2012 was 35,976. Martin claimed 34,980 vehicle business miles for 2012. (*See* Ptfs' Ex 4; Def's Ex K at 9.) Martin's use of his vehicle was not 100 percent for business; therefore he is subject to the substantiation requirements under IRC 274(d).

Upon audit, Martin did not provide additional records into evidence, such as reimbursement reports or a travel spreadsheet, which listed the necessary information to comply with the substantiation requirements under Treasury Regulation § 1.274-5T(c)(1). No additional testimony was provided at trial to substantiate the mileage claimed on Plaintiffs' 2012 tax return. The court is not convinced that the substantiation requirements have been met for the claimed 2012 mileage. Plaintiffs' claim for unreimbursed business mileage is denied for the 2012 tax year.

## III. CONCLUSION

After careful review of the evidence, the court concludes that Plaintiffs are entitled to a deduction for unreimbursed employee travel expenses equating to 36,643 miles for the 2011 tax year. Plaintiffs are not entitled to a deduction for unreimbursed employee travel expense for the 2012 tax year. Now, therefore,

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs are entitled to a deduction for unreimbursed employee travel expenses equating to 36,643 miles for the 2011 tax year, resulting in a deduction of $19,421.

IT IS FURTHER DECIDED that Plaintiffs are not entitled to a deduction for unreimbursed employee travel expenses for the 2012 tax year.

Dated this ___ day of December, 2017.


RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Davis and entered on December 28, 2017.*